IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RAYMOND COLEMAN, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:16CV961–HEH
)
K. McNELIS, *et al.*, )
)
    Defendants. )

## MEMORANDUM OPINION
**(Granting Motion for Summary Judgment)**

Raymond Coleman, a former Virginia inmate[1] proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983.[2] In his Complaint, Coleman contends that Correctional Officer K. McNelis and Correctional Officer N. Melton ("Defendants")[3] acted with deliberate indifference in violation of Coleman's Eighth

---

[1] It appears that Coleman is no longer incarcerated. (*See* ECF No. 41.)

[2] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[3] By Memorandum Opinion and Order entered on June 26, 2018, the Court dismissed four Unknown and Unnamed Employees listed in his Complaint because Coleman had failed to serve them. (ECF Nos. 45–46.)

Amendment[4] rights by allowing him to be attacked by a fellow inmate. On December 5, 2017, the Court denied without prejudice two Motions for Summary Judgment filed by Defendants McNelis and Melton. (ECF Nos. 33–34.) The matter is now before the Court on Defendants' Renewed Motion for Summary Judgment ("Motion for Summary Judgment," ECF No. 38), wherein the Defendants argue that Coleman failed to exhaust his administrative remedies. Defendants provided Coleman with the appropriate *Roseboro*[5] notice. (ECF No. 40.) Coleman has not responded to the Motion for Summary Judgment. The matter is ripe for disposition.

## I. Summary of Allegations

In the days leading up to November 25, 2014, Coleman was incarcerated at Deep Meadow Correctional Center ("DMCC"). (*See* Compl. ¶¶ 13, 16, ECF No. 1.)[6] Prior to November 25, 2014, Coleman witnessed fellow inmate Jonathan Scott Lemay

> create a big scene shouting, threatening and warning DMCC staff, Officer K. [] McNelis . . . who was on the floor, and [Correctional Officer] Melton . . . who was in the control booth, of [Lemay's] intentions to harm someone if they didn't transfer him from DMCC stating: "*Ya'll better get me up off of here or else I'm goin' to do somethin' to somebody!*"

(*Id.* ¶ 16.) McNelis and Melton laughed off Lemay's warnings and did not take him seriously. (*Id.* ¶ 17.)

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[6] The Court employs the pagination assigned by the CM/ECF docketing system to Coleman's submissions. The Court corrects the capitalization, spacing, punctuation, and spelling in quotations from Coleman's Complaint. Throughout his Complaint, Coleman cites to his attached Affidavit. In the interest of brevity, the Court omits all secondary citations from the Complaint.

2

On November 25, 2014, Coleman returned to Building One at DMCC "after feeding," where he and Lemay were housed. (*Id.* ¶¶ 18–19.) When Coleman entered the building, "he observed Lemay sitting on his own bunk facing opposite [of] Coleman's bunk." (*Id.* ¶ 18.) Coleman sat down in the chair next to his bunk and began watching T.V. (*Id.*) Approximately five minutes later, Coleman laid down on his bunk. (*Id.* ¶ 18.)

A few minutes later, Coleman saw Lemay in line for the microwave. (*Id.* ¶ 20.) Coleman continued to lay in his bunk and watch T.V. (*Id.*) "The next thing [Coleman] knew, scolding hot water was thrown was thrown in his face, neck, chest, arm, and upper torso." (*Id.* ¶ 21.) Coleman jumped up and saw Lemay standing before him with a pool ball in his hand. (*Id.* ¶ 22.) Lemay began shouting, "*Come on, mutherfucker! I'm gon' to kill your ass! I'm gon' to kill yo' ass!*" (*Id.*) Lemay then began swinging the pool ball, and Coleman, believing his life was in danger, "tussled" with him. (*Id.* ¶¶ 23, 24.) Lemay hit Coleman with the pool ball and the pair "tussled some more" before Coleman threw Lemay onto a pool table and several officers arrived. (*Id.* ¶ 24.) Coleman was immediately taken to DMCC medical and then to the Medical Center of Virginia ("MCV") where he was treated for second and third degree burns to his face, neck, chest, arm, and torso. (*Id.* ¶ 25.) That same day, Coleman was charged with violating VDOC Operating Procedure 861.1, Offense Code 218 (fighting with any person). (*Id.* ¶ 12.)

On his second day at MCV, the nurses packed up Coleman's belongings and stated that DMCC had ordered them to do so. (*Id.* ¶ 27.) Coleman was then transferred back to DMCC in a VDOC van rather than in an ambulance. (*Id.* ¶ 28.) At DMCC, he was

3

placed in segregation without medical treatment. (*Id.* ¶ 29.) The next morning, Coleman was transferred to Greensville Correctional Center ("GCC") "with orders to place him in segregation." (*Id.*) At GCC, he was screened by medical personnel. (*Id.* ¶¶ 30–31.) Sergeant G.D. Faulcon and Nurse Epps "determined that if they placed [Coleman] in segregation, he would not survive the night." (*Id.* ¶ 31.) Sergeant G.D. Faulcon and Nurse Epps notified their supervisors of Coleman's condition, and Coleman was placed in the medical unit at GCC. (*Id.*) Coleman remained in GCC's medical unit for approximately one month. (*Id.* ¶ 33.)

Coleman states that as a result of the incident, he has scars on his face, shoulder, neck, and chest, severe nerve damage, and high blood pressure. (*Id.* ¶ 35.) Coleman experiences panic attacks, feelings of hopelessness, and nightmares about the incident with Lemay. (*Id.*) Coleman is "currently in the process of relearning how to speak and write" and is partially blind. (*Id.*)

## II. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and

4

admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only cited materials, but it may consider other materials in the record."). Defendants ask the Court to dismiss Coleman's claims because Coleman failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

In support of their prior Motions for Summary Judgment, Defendants submitted: (1) the Affidavit of M. Seay, Institutional Ombudsman at DMCC ("Seay Aff. I," ECF No. 27–1); (2) a copy of VDOC's Operating Procedure § 866.1 (*id.* Encl. A, ECF No. 27–1, at 5–18); and, (3) copies of Coleman's various informal complaints, grievances, letters, and appeals (*id.* Encl. B, ECF No. 27–1, at 19–32). In support of their current Motion for Summary Judgment, Defendants submitted: (1) a Supplemental Affidavit of M. Seay ("Seay Aff. II," ECF No. 39–2); (2) the Affidavit of L. Talbott, Administrative Staff Specialist Senior at GCC ("Talbott Aff.," ECF No. 39–3); (3) the

5

Affidavit of D. Everett, Health Services Administrator at GCC ("Everett Aff.," ECF No. 39–4); (4) the Affidavit of Defendant K. McNelis ("McNelis Aff.," ECF No. 39–6); and, (5) various copies of Coleman's grievances, records from VDOC detailing Coleman's grievance history, and copies of Coleman's pertinent medical reports.[7]

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. With his Complaint, Coleman submitted an Affidavit ("Coleman Aff.," ECF No. 1–1) and copies of his various informal complaints, grievances, letters, and appeals.[8] (Compl. Ex. 2, ECF No. 1–2). Coleman submitted a Response to the Defendants' first Motions for Summary Judgment (ECF Nos. 18, 19), and a second Affidavit. ("Coleman Aff. II," ECF No. 18, at 12–13.) Coleman also submitted a third Affidavit in response to the first Motions for Summary Judgment. (ECF No. 30–1.)

In light of the foregoing principles and submissions, the facts set forth below are established for purposes of the Motion for Summary Judgment. All permissible inferences are drawn in Coleman's favor.

---

[7] In the interests of judicial economy, the Court will cite to the CM/ECF citations for these materials as needed.

[8] Coleman and Defendants have submitted copies of numerous grievance materials submitted by Coleman during the course of his incarceration. For purposes of judicial efficiency, the Court omits recitation of grievance materials not pertinent to the Defendants' current Motion for Summary Judgment.

6

## III. Summary of Pertinent Facts

### A. VDOC's Grievance Procedure

Operating Procedure § 866.1, Inmate Grievance Procedure, is the mechanism used to resolve inmate complaints. (*See* Seay Aff. I ¶ 4.) Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints.[9] (Operating Procedure § 866.1.V.B, Seay Aff. II Encl. B, ECF No. 39–2.) A good faith effort requires the inmate to file an informal complaint form. (*Id.* § 866.1.V.B.1.) If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. (*Id.* § 866.1.VI.A.2.) "The offender is responsible for submitting the Informal Complaint in a timely manner to allow time for staff response within the time period allowed to file a [Regular] Grievance" (*id.* § 866.1.V.B.2 (emphasis omitted)), and that "[t]he time for staff response to an offender's informal complaint shall be no longer than 15 calendar days to ensure responses are provided prior to the expiration of the 30-day time requirement for an offender to file his/her grievance." (*id.* § 866.1.V.C.) Regular grievances must be submitted within 30 calendar days from the date of the incident. (*Id.* § 866.1.VI.A.1.)

"The original Regular Grievance (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator."

---

[9] The Court omits the emphasis in the quotations from the Operation Procedure.

(*Id.* § 866.1.VI.A.2.b.) The offender must attach to the regular grievance a copy of the informal complaint. (*Id.* § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally." (*Id.* § 866.1.V.B.2.) A regular grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

### 1. Grievance Intake Procedure

Prior to review of the substance of a regular grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. (*Id.* § 866.1.VI.B.) A grievance meeting the criteria for acceptance is logged in on the day it is received, and a "Grievance Receipt" is issued to the inmate within two days. (*Id.* § 866.1.VI.B.3.) If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.4.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.5.)

### 2. Grievance Appeals

Up to three levels of review for a regular grievance exist. (*Id.* § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.V.C.1.) If the offender is dissatisfied with the determination

8

at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Administrator, the Health Services Director, Superintendent for Education, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (*Id.* § 866.1.VI.C.2.g.)

### B. Facts Pertaining to Coleman's Exhaustion of Administrative Remedies

As alleged in Coleman's Complaint, immediately after the altercation at DMCC on November 25, 2014, Coleman was transferred to MVC where he remained until November 28, 2014, when he returned to DMCC. (Everett Aff. ¶ 5.) The next day, on November 29, 2014, Coleman was transferred to GCC where he was placed in the infirmary. (Talbott Aff. ¶ 4.) Coleman remained in the infirmary at GCC until December 24, 2014. (Seay Aff. II ¶ 5.) After December 24, 2014, Coleman was placed in segregation at GCC. (Talbott Aff. ¶ 4.)

On December 24 and 25, 2014, while housed in segregation at GCC, Coleman filed three Emergency Grievances wherein he complained about his medical care. (Talbott Aff. ¶ 5; *id.* Encl. A, ECF No. 39–3, at 4–6.) On December 29, 2014, GCC received an Informal Complaint from Coleman wherein he complained about his medical care. (Seay Aff. II ¶ 7; *id.* Encl. D, ECF No. 39–2, at 31.) Coleman subsequently submitted three more Informal Complaints to GCC that were received on January 12, 2015, January 15, 2015, and January 22, 2015. (*Id.* Encl. D, ECF No. 39–2, at 31.) In each of these Informal Complaints, Coleman complained of his medical care. (*See id.*)

The record establishes that Coleman's first complaint regarding the November 25, 2014 incident was received on February 23, 2015. Specifically, on February 23, 2015, an Operations Manager at DMCC received an Informal Complaint from Coleman wherein he detailed the November 25, 2014 incident, complained that he was charged with defending himself, and recounted that he lost a month of good time credit. (Seay Aff. II ¶ 6; *id.* Encl. C., ECF No. 39–2, at 21.) On February 25, 2015, Operations Manager Ware responded that Coleman "failed to address these issues in accordance with policy. Expired filing time[]." (*Id.* Encl. C., ECF No. 39–2, at 21.)

On April 17, 2015, Coleman submitted a second Informal Complaint to DMCC Grievance Department ("April 15, 2015 Informal Complaint,"), wherein he stated,

> On [November 25, 2014] Offender J. Lemay . . . intentionally threw a container of microwave boiling hot water in my face and upper torso causing significant injury. Such action was [a] direct result of [Correctional Officer] McNelis and [Correctional Officer] Melton's negligence and breach of duty of ordinary care in failing to prevent the confrontation prior to the assault, where Lemay had notified staff of his intent to do a violent act then proceeded to argue at me.

(ECF Nos. 15–1, at 22; 27–1, at 22.) In response, the Institutional Ombudsman replied on April 24, 2015 stating, "You submitted [a prior Informal Complaint] on February 23, 2015—nothing further was sent . . . Expired filing time." (ECF Nos. 15–1, at 22; 27–1, at 22.)

On May 1, 2015, Coleman submitted a Regular Grievance complaining that he was injured by Lemay on November 25, 2014 because Officers McNelis and Melton failed to prevent the attack. (Grievance Materials, ECF Nos. 15–1 at 19; 27–1 at 19.) The DMCC Institutional Grievance Office received Coleman's

regular grievance on May 5, 2015. (Seay Aff. ¶ 8.) Coleman's regular grievance was rejected at intake on May 5, 2015 because the period for which to file a regular grievance had expired. (ECF Nos. 15–1, at 20; 27–1, at 20.)[10]

## IV. Exhaustion Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits.'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules

---

[10] The record reflects that Coleman filed various appeals of GCC's rejection of his May 1, 2015 Informal Complaint, and many subsequent informal complaints and regular grievances about the "nightmares" he experienced as a result of the November 25, 2014 incident. However, because the Court's exhaustion analysis focuses solely on whether Coleman timely filed an informal complaint and regular grievance about the November 25, 2014 incident, the only claim currently before the Court, the Court omits recitation of Coleman's other grievances and appeals.

11

"define the boundaries of proper exhaustion." *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

As explained by the United States Court of Appeals for the Fourth Circuit, the lone exception to the PLRA's exhaustion requirement is found in the text itself: "A prisoner need not exhaust remedies if they are not 'available.'" *Germain v. Shearin*, 653 F. App'x 231, 232 (4th Cir. 2016) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016)).

The Supreme Court has identified three circumstances where remedies are considered not available to a prisoner:

> (1) where the procedure "operates as a simple dead end" because officials are "unable or consistently unwilling to provide any relief to aggrieved inmates[;]" (2) where the grievance process itself is so incomprehensible that "no ordinary prisoner can discern or navigate it [;]" and (3) where administrators prevent inmates from availing themselves of remedies by way of "machination, misrepresentation, or intimidation."

*Id.* at 232–33 (alterations in original) (citation omitted).

The record reflects that Coleman failed to file both an informal complaint and a regular grievance in the time required by Operating Procedure § 866.1. Specifically, the record establishes that the earliest Informal Complaint that Coleman filed about the November 25, 2014 incident was received by DMCC on February 23, 2015. This is well outside the timeframe established in Operating Procedure § 866.1.V.B.2. The record also establishes that the earliest Regular Grievance that Coleman filed about the November 25, 2014 incident was on May 1, 2015. (Grievance Materials, ECF Nos. 15–1 at 19; 27–1 at 19.) This too is well outside the 30 day timeframe for filing regular grievances established by Operating Procedure § 866.1.

In response to the Defendants' first Motions for Summary Judgment, Coleman advances two arguments. First, Coleman argued that Operating Procedure § 866.1 "does not stipulate a filing time requirement for informal complaints, only regular grievances," (ECF No. 18, at 7), and that therefore, his April 17, 2015 Informal Complaint regarding the November 25, 2014 incident should not have been rejected as untimely.[11] (*Id.*) Coleman is incorrect. As detailed herein, Operating Procedure § 866.1 states that "[t]he offender is responsible for submitting the Informal Complaint in a timely manner to allow time for staff response within the time period allowed to file a [Regular] Grievance," (Operating Procedure § 866.1.V.B.), and that "[t]he time for staff response to an offender's informal complaint shall be no longer than 15 calendar days to ensure responses are provided prior to the expiration of the 30-day time requirement for an offender to file his/her grievance." (Operating Procedure § 866.1.V.C.) Therefore, Coleman was required to file his April 17, 2015 Informal Complaint at the very latest, within thirty days of the November 25, 2014 incident. (*See* Operating Procedure § 866.1.V.C.) He failed to do so and, thus, his April 17, 2015 Informal Complaint was properly denied at intake as untimely.

Second, Coleman argues that he did not file an informal complaint and regular grievance about the November 25, 2014 incident within the required time frame because the "traumatic event" prevented him from complying with such requirements. Coleman

---

[11] The Court notes that the record establishes that Coleman's first Informal Complaint regarding the November 25, 2014 incident was received by DMCC on February 23, 2015 and was rejected at intake as untimely. It is unclear why Coleman focuses his argument on the April 17, 2015 Informal Complaint.

13

contends that he sustained physical and emotional injuries that were "beyond his control" and therefore he should not have been subject to the time line detailed in Operating Procedure § 866.1. (ECF No. 18, at 8–10; *see* Coleman Aff. II ¶¶ 7–9, ECF No. 18, at 12.)

Although "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it," *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted), Coleman fails to demonstrate that he was somehow prevented from pursuing an informal complaint or grievance. Section "1997e(a) does not permit the court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'" *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (citation omitted). To excuse compliance with a grievance system, courts have required an inmate to show that he was prevented from filing a grievance by affirmative action on the part of prison officials. *See Ross v. Bliake*, 136 S. Ct. 1850, 1859–61 (2016) (reaffirming that grievance procedures are only unavailable when they operate as a dead end, the administrative scheme is unnavigable, or prison administrators thwart an inmate from taking advantage of it); *Graham v. Cnty. of Gloucester, Va.*, 668 F. Supp. 2d 734, 738 (E.D. Va. 2009) (citing *Brown v. Croak*, 313 F.3d 109, 112–13 (3d Cir. 2002); *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000); *Born v. Monmouth Cnty. Corr. Inst.*, No. 07-3771, 2008 WL 4056313, at *3–4 (D.N.J. Aug. 28, 2008)).

The record reflects that while Coleman was housed in the infirmary and segregation at GCC, he had access to the institutional grievance process and was not

prevented from filing grievances. (Talbott Aff. ¶ 5.) Furthermore, Coleman actually filed three Emergency Grievances while housed in segregation at GCC wherein he complained about his medical care, and one of these Emergency Grievances was filed during the thirty days following the November 25, 2014 incident. (*See id.* ¶ 6; Mem. Supp. Mot. Summ. J. 7–11.) Moreover, "had Coleman requested assistance with a grievance, security and administrative staff were available to assist him with completing any informal complaints and grievance forms." (Talbott Aff. ¶ 6.)

Given the current record, Coleman cannot stave off summary judgment with his vague assertions that his medical condition prevented him from filing a grievance in a timely manner. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (alteration in original) (internal quotation marks omitted) (citations omitted) (observing that "[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment"); *Gray v. Corizon Health Servs.*, No. 1:14–CV–947, 2015 WL 5098384, at *6 (W.D. Mich. Aug. 31, 2015) (granting summary judgment to defendants because plaintiff did not submit any medical evidence in support of his argument that his medical condition prevented him from utilizing the grievance process).

The record establishes that Coleman filed at least one Emergency Grievance complaining about his medical care within the thirty-day time frame of the November 25, 2014 incident. The record further establishes that prison personnel were available to assist Coleman with filing any grievances while he was housed in the infirmary. Coleman has not provided any evidence that administrative remedies were not available to him or that he properly pursued available administrative remedies as required by

Operating Procedure 866.1. Accordingly, Defendants are entitled to summary judgment pursuant to 42 U.S.C. § 1997e(a). *See Hinton v. O'Connor*, No. 7:14–CV–00197, 2016 WL 3042969, at *2 (W.D. Va. May 27, 2016) (rejecting plaintiff's argument that his medical condition prevented him from filing a timely grievance because, *inter alia*, he pursued other grievances during the applicable timeline), *aff'd sub nom. Hinton v. Anderson*, 671 F. App'x 144 (4th Cir. 2016); *Duncan v. Clarke*, No. 3:12CV482, 2015 WL 75256, at *7 (E.D. Va. Jan. 6, 2015) (granting summary judgment where plaintiff did not dispute that he had access to the grievance procedure during his time in the infirmary), *aff'd*, 616 F. App'x 57 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1671 (2016). Accordingly, Defendants' Motion for Summary Judgment (ECF No. 38) will be granted.

## VI. Conclusion

In light of the foregoing, Defendant's Motion for Summary Judgment (ECF No. 38) will be granted. Coleman's claims will be dismissed. The action will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

Date: July 31, 2018
Richmond, Virginia

/s/
HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE